# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA CHAVEZ CARLOS, | Case No.  1:21-cv-00517-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 18, 24) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Bertha Chavez Carlos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 9, 12, 13.)

**II.**

**BACKGROUND**[2]

Plaintiff concurrently filed the instant applications for Social Security benefits under Title II and for Supplemental Security Income ("SSI") under Title XVI on February 4, 2016, alleging disability beginning August 16, 2013.  (See Admin. Rec. ("AR") 269–77, ECF Nos. 14-1, 14-2.)  Plaintiff's claims were initially denied on July 15, 2016, and denied upon reconsideration on December 12, 2016.  (AR 142–43; see also AR 31.)  On September 26, 2018, Plaintiff, represented by counsel[3] and with the assistance of a Spanish interpreter, appeared for an administrative hearing before Administrative Law Judge Timothy S. Snelling (the "ALJ") in Fresno, California.  (AR 53–73.)  Vocational expert ("VE") Cheryl R. Chandler, also testified at the hearing.  On January 29, 2019, the ALJ issued a decision denying benefits.  (AR 25–52.)  On February 5, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 13–20.)

Plaintiff initiated this action in federal court on March 29, 2021, and seeks judicial review of the denial of her applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on January 26, 2022.  (ECF No. 14.)  On May 16, 2022, Plaintiff filed her opening brief.  (ECF No. 18.)  On July 13, 2022, Defendant filed a brief in opposition.  (ECF No. 24.)  No reply brief was filed, and the matter is now deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the administrative level, Plaintiff was represented by attorney Linda Bosquez, of the law offices of Bosquez and Siemens.  (See AR 31, 157–60.)  Plaintiff is currently represented by attorney Jonathan O. Pena, of the law firm Pena & Bromberg, PLC.  (See ECF No. 18 at 1.)

determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent the cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations are applicable to both claims.

1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, <u>available at</u> 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel (Lewis I), 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of

fact and conclusions of law as of the date of the decision, January 29, 2019 (AR 33–46):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016, and Plaintiff has not engaged in substantial gainful activity since August 16, 2013, the alleged onset date.  (AR 33 (citing 20 C.F.R. §§ 404.1571 et seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: major depressive disorder, right foot impairment status post-surgery, diabetes mellitus with neuropathy, heart impairment, exogenous obesity, hepatitis C virus, osteoporosis, migraine headaches, a history of cataract surgery, a history of chronic non healing ulcer on the right foot and ulceration of the left foot great toe, a history of diverticulosis, and reflux esophagitis.  (Id. (citing 20 C.F.R. §§ 404.1520(c); 416.920(c)).)  The ALJ also noted not all of these impairments are severe if considered separately, but are "severe in combination."  (AR 34.)

The ALJ also considered Plaintiff's mental impairment of major depressive disorder, and determined it did not meet or medically equal the criteria of any listing.  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because she has no limitations in three of the four broad functional areas, and her limitations in the fourth area are of mild severity.[7]  (AR 34–35.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 35 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926).)

---

[7] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **A wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).**[8]  **Specifically, the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently.  She can stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday with normal breaks. She can frequently climb ramps and stairs, but she cannot climb ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl, but she must avoid concentrated exposure to extremes of heat and cold, wetness and humidity, very loud noise, very bright lights, pulmonary irritants, and hazards.**

(AR 35–46 (citing 20 C.F.R. §§ 404.1529; 416.929; 404.1527; 416.927; SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is capable of performing her past relevant work as a Cleaner, Industrial (Dictionary of Occupational Titles ("DOT") 381.687-018), a medium work position with a specific vocational preparation ("SVP") level of 2.  (AR 46 (citing 20 C.F.R. §§ 404.1565; 416.965).)  The ALJ also noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on her professional experience.  (<u>Id.</u>)

Having concluded Plaintiff is capable of performing her past relevant work, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 16, 2013 (the alleged onset date), through January 29, 2019 (the date of decision).  (<u>Id.</u> (citing 20 C.F.R. §§ 404.1520(f); 416.920(f)).)

## V.

## DISCUSSION

Plaintiff asserts two challenges on appeal: (1) the ALJ erred at step two in failing to consider the established impairments of chronic diarrhea and diabetes mellitus to be severe impairments, resulting in an incomplete RFC assessment; and (2) the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints.  (ECF No. 18

---

[8] The SSA regulations define "medium work" as involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, plus a good deal of walking or standing, or—when it involves sitting most of the time—some pushing and pulling of arm or leg controls.  <u>See</u> 20 C.F.R. § 404.1567.

at 3, 9–17.)

### A.    Step Two Evaluation of Severe Impairments

#### 1.    Legal Standard

At step two of the disability inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments.[9]  Smolen, 80 F.3d at 1289–90 (citing Bowen v. Yuckert (Yuckert), 482 U.S. 137, 140–41 (1987)).   In reaching this determination,  the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  Smolen, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B)).   Further, the Regulations require "a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities…"  SSR 85-28, at *4; see also Yuckert, 841 F.2d at 306 (adopting SSR 85-28).   At step two, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  SSR 85-28, at *4.

Notably, Ninth Circuit precedent treats step two of the disability inquiry as "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290.  Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85-28).  Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment."  See, e.g., Burch, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citation omitted).

#### 2.    Analysis

Plaintiff challenges the ALJ's step two determination on the basis that the ALJ failed to consider the established impairments of chronic diarrhea and diabetes mellitus to be severe

---

[9] The SSA and caselaw discuss the step two severity determination in terms of what is "not severe."  An impairment is "not severe" if it does not significantly limit the claimant's physical ability to do basic work activities.  20 C.F.R. §§ 404.1520(c); 404.1521(a)(1991).  Basic work activities are defined as "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 140.1521(b); SSR 85-28, available at 1985 WL 56856 (Jan. 1, 1985).

impairments.  (ECF No. 18 at 3.)

      **a.**    **Diabetes Mellitus**

Plaintiff's challenge with respect to the diabetes mellitus is entirely unfounded.  A plain reading of the ALJ's decision shows he included diabetes mellitus in his step two analysis and deemed it to be severe in combination with Plaintiff's other identified impairments:

> The claimant has the following medically severe combination of impairments: major depressive disorder; right foot impairment status post-surgery; **diabetes mellitus with neuropathy** …

> The medically severe combination of the above impairments caused more than minimal functional limitations.  These impairments are established by the medical evidence and are "severe in combination" within the meaning of the Regulations because, as discussed in detail below, these impairments "in combination" are more than slight abnormalities and "in combination" cause more than minimal limitations in the claimant's ability to perform basis work activities. (SSR 86-8).  While not all of these impairments are severe if considered separately, the claimant's medically determinable impairments, in combination, are severe (20 CFR 404.1523 and 416.923).  Once the claimant has established a severe impairment or combination of impairments, all medically determinable impairments must be considered in deciding the appropriate residual functional capacity (20 CFR 404.1545(e) and 416.945(e)).

(AR 33–34 (emphasis added).)  The Court acknowledges it appears unclear which of the listed impairments, if any, the ALJ considered to be nonsevere if considered separately, even though they are all severe in combination; however, the Court is unpersuaded that such a distinction comports with the step two requirements set forth by the Regulations and legal precedent.  As noted, step two requires the ALJ to determine whether the claimant has a medically severe impairment *or combination of impairments*.  Smolen, 80 F.3d at 1289–90; Yuckert, 482 U.S. at 140–41; SSR 85-28.  Here, the ALJ determined Plaintiff had a severe combination of impairments.  This appears to satisfy the "de minimis screening" purpose of the step two analysis.  Furthermore, the ALJ plainly considered and addressed Plaintiff's diabetes mellitus during the subsequent steps of the disability inquiry (see AR 37, 38, 39, 40, 44), and the RFC limits Plaintiff to medium work with multiple restrictions.  On this record, it appears the ALJ considered Plaintiff's diabetes mellitus to be a severe impairment.  See also Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), superseded by regulation on other grounds ("Even when an agency explains

its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").  Thus, as to the diabetes mellitus, there is no error at step two.

  **b.**  **Chronic Diarrhea**

  The issue of whether the ALJ erred in failing to consider Plaintiff's "established impairment" of "chronic diarrhea" at step two is a different issue.  It is undisputed that the ALJ does not include "chronic diarrhea" as an impairment in the group of impairments he considered to be "severe in combination" at step two.  (See ECF No. 24 at 8.)  There is, however, some question as to whether he was required to do so.  That is, the Court is not entirely persuaded that Plaintiff sufficiently established her diarrhea constitutes a "medically determinable impairment," a burden which is hers.  See Ford, 950 F.3d at 1148 (claimant has burden of proof at steps one through four); Burch, 400 F.3d at 679 (same).

  A "medically determinable impairment" under the Regulations must be established through medically acceptable clinical diagnostic techniques.  Savannah v. Astrue, 252 Fed. App'x. 783, 785 (9th Cir. 2007) (citing 20 C.F.R. § 416.908; 20 C.F.R. § 416.905(a); 42 U.S.C. § 423(d)(3)).  This requires the claimant to produce "medical evidence consisting of signs, symptoms, and laboratory findings, not only a statement of symptoms."  Id. (citing 20 C.F.R. § 416.908) (internal quotations and edits omitted); compare id. (holding diagnosis by a medical expert constitutes objective medical evidence of an impairment) with Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to meet his burden of establishing disability where none of the medical opinions he presented included a finding, diagnosis, or objective test results of impairment).

  Here, it is unclear from the medical evidence that Plaintiff had an established impairment of chronic diarrhea.[10]  Rather, at most, it appears Plaintiff's diarrhea may have reasonably been attributed as a *symptom* of conditions addressed and discussed by the ALJ.  For example, an August 2013 medical note indicates Plaintiff went to the emergency room for vomiting and

---

[10] It also appears notable that Plaintiff's initial disability application only alleges disability based on right foot problems, diabetes, hypertension, and heart problems, and does not mention chronic diarrhea.  (AR 36 (citing AR 304).)  Similarly, neither Plaintiff's initial disability application, nor the third-party statement mentions Plaintiff had issues with diarrhea, despite reporting to a medical provider in 2013 that she had a history of chronic diarrhea.  (See AR 303–23.)

diarrhea, and was assessed with acute gastroenteritis.  (AR 38 (citing AR 525–27).)  In December 2013, Plaintiff underwent a consultation and colonoscopy for a *reported* "history of chronic diarrhea and stool incontinence"; and it was noted these symptoms may be related to her longstanding diabetes mellitus causing neuropathy.  (Id. (citing AR 420).)  And in December 2017, Plaintiff was treated by Dr. Jalodia for her symptoms of abdominal pain and diarrhea, and was assessed with internal hemorrhoids and diverticulosis of the colon; she was advised to eat a high fiber diet.  (AR 44 (citing AR 870–71).)  Thus, while the ALJ did not list "chronic diarrhea" as an impairment, he does identify Plaintiff's diabetes mellitus and diverticulosis—conditions of which the medical records indicate Plaintiff's diarrhea was a symptom—as severe impairments.  Indeed, the questions the Plaintiff's own attorney posed to her at the September 26, 2018 hearing support the viewpoint that Plaintiff's diarrhea was a symptom of her other impairments, rather than an independent impairment itself.  (See AR 61 (Q: "as a result of the diverticulitis, the diabetes, do you have stomach problems?"; A: "Yes, many."; Q "And how does that affect you on a daily basis … Do you have diarrhea?"; A: "A lot.").)

Furthermore, the medical evidence supports the ALJ's omission of diarrhea-based limitations in the RFC determination.  Notably, Plaintiff failed to report chronic diarrhea during a number of medical examinations.  For example, she did not report diarrhea during her October 2014 evaluations with Drs. Rios and Portnoff.  (See AR 39–40 (citing AR 591–94, 598–601).)  Consequently, these doctors did not assess such condition.  And Plaintiff denied diarrhea in other medical notes.  (See AR 41 (citing AR 759–60); see also AR 446, 470, 576, 605, 609, 632, 635, 681, 694, 704, 707, 718, 720, 723, 726, 741, 743, 755, 779, 783, 795, 799.)  The ALJ also noted Plaintiff did not seek any treatment for abdominal pain or diarrhea after December 2017.  (AR 44.)  Finally, when Plaintiff reported to Dr. Damania in April 2018 for an internal medicine evaluation and alleged she had experienced constant abdominal pain and diarrhea for the past two years, she also acknowledged she had received "no definite diagnosis" relating to her diarrhea.  (See AR 43–44 (citing AR 856–66).)  Further, Dr. Damania ultimately did not opine any limitations were required to accommodate Plaintiff for diarrhea.  (AR 41; see also AR 44–45 (according "great weight" to Dr. Damania's opinion)); Ukolov, 420 F.3d at 1006.  Meanwhile,

Plaintiff has not identified any medical opinion evidence in which concrete limitations for her diarrhea were identified.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions).  On this record, the Court is not persuaded that Plaintiff has met her burden of establishing chronic diarrhea was a "medically determinable impairment" under the Regulations, or that the ALJ was required to include a diarrhea-based limitation in the RFC determination.

Furthermore, even if the ALJ erred at step two by not including Plaintiff's "chronic diarrhea" in the list of severe combination of impairments, Plaintiff has not met her burden of establishing that such error was not harmless.  As previously noted, even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  An error is harmless if it is "inconsequential to the ultimate nondisability determination." Molina, 674 F.3d at 1117 (quoting Lewis I, 236 F.3d at 503) (holding "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.' ").  Moreover, it is the Plaintiff's burden to establish an error is not harmless.  See Shinseki, 556 U.S. at 409.  Within the context of a step two challenge, again, the aforementioned authorities indicate the purpose of the step two determination is to serve as a de minimis screening device.  Hence, the Regulations provide that, where the ALJ is unable to clearly determine whether an impairment is sufficiently severe, he is directed to err on the side of inclusivity and proceed to subsequent steps of the sequential disability inquiry, which require a more in-depth analysis of the record.

Here, the ALJ did proceed with the disability inquiry; moreover, he plainly considered the Plaintiff's diarrhea in his evaluation of the medical and nonmedical evidence to reach the RFC determination.  (See AR 37, 38, 41, 43, 44); see also Lewis v. Astrue (Lewis II), 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" because the ALJ discussed bursitis later in the disability analysis); Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines

would affect claimant's functioning at work).  Plaintiff has not challenged the ALJ's evaluation of the medical record and opinions or otherwise demonstrated the medical evidence compels a different RFC determination.

For the foregoing reasons, the Court concludes Plaintiff's step two argument is unavailing.

**B.    Evaluation of Plaintiff's Subjective Testimony**

1.    Legal Standard[11]

The ALJ is responsible for determining credibility,[12] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in

---

[11]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 24 at 12 n.5.)

[12]  SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

the testimony are functions solely of the Secretary.

<u>Valentine v. Astrue</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); <u>see also</u> <u>Lambert</u>, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  <u>See</u> <u>Vertigan</u>, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); <u>see also</u> 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  <u>See</u> <u>Burch</u>, 400 F.3d at 680–81; <u>see also</u> <u>Stobie v. Berryhill</u>, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  <u>Burch</u>, 400 F.3d at 680–81; <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  <u>See</u> <u>Hairston v. Saul</u>, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1160 (9th Cir. 2008)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); <u>see also</u> <u>Woods v. Comm'r of Soc. Sec. (Woods I)</u>, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the claimant's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

2.      Plaintiff's Testimony

In her disability applications, Plaintiff alleges disability based on right foot problems, diabetes, hypertension, and heart problems.  (AR 304.)  She alleges she stopped working because her job ended but she also believes her conditions became severe enough to keep her from working.  (Id.)  She reported dizziness, headaches, weakness, shortness of breath, and loss of short-term memory.  (AR 297.)

At the September 26, 2018 hearing, Plaintiff testified she is unable to work due to stomach problems—mainly diarrhea—which result from her diverticulitis and diabetes.  (AR 61.)  Plaintiff testified that after eating, she spends a 60–90 minutes in the restroom, and that she has a lot of diarrhea.  Plaintiff testified she has accidents four times a week and she currently wears a diaper, but the diaper doesn't always catch the waste and sometimes spills out.  (AR 61–62.)  She went to the emergency room in February 2018 for a bout of diarrhea that would not stop; she was

discharged the same day.  (AR 62–63, 66.)  Plaintiff testified her diarrhea causes her to be tired and exhausted and feel sad.  (AR 63.)  She tried multiple medications but none resolved the issue and she has stopped taking medication.  (AR 66.)

Plaintiff testified her foot ulcers related to her diabetes have resolved, post-surgery, but she still experiences difficulty walking, and needs to use a cane because the strength in her legs gives out.  (AR 62, 68.)  Plaintiff confirmed, however, that her doctor did not prescribe the cane in connection with her foot issues, but that she received it in 1998 when she fractured her foot.  (AR 69–70.)  Plaintiff testified that her diabetes is under control, but acknowledged that it was not very well-controlled for a period of time in which she was having diabetic ulcers on her foot.  (AR 68.)  Plaintiff testified her doctors changed and titrated her medications multiple times to get her diabetes under control.  (Id.)  She received education from her medical providers on better diet and lowering her sugar intake.  (AR 69.)

Plaintiff reported she cannot stand for too long; she sometimes cannot finish cooking because she has to sit down to "get past the dizziness"; she can clean the house, but she has to take several breaks, and her foot swells up sometimes; she cannot walk more than one block, at a very slow pace; she cannot lift anything heavier than a gallon of milk; her daughters help her with the grocery shopping and most things; and she can wash dishes.  (AR 297–99.)  At the hearing, Plaintiff testified she does housework; she sometimes goes to church; and she does the cooking most of the time.  (AR 63, 70.)  Plaintiff's husband attends the parent-teacher conferences and school functions for their 12-year-old son.  (AR 70.)  Plaintiff testified her ability to perform these activities is limited by how much time she is in the restroom.  (See AR 63, 70.)

3.    ALJ's Summary of the Relevant Medical Evidence

As relating to her diabetes, for example, the ALJ noted Plaintiff was briefly hospitalized in March 2014 for pneumonia and treatment of her "underlying pressure injury and ulceration," of her right foot.  Plaintiff was prescribed a wheelchair at that time; however, it was noted that Plaintiff was not managing her glucose levels.  (See also AR 68 (in response to Plaintiff's statement that her diabetes were under control, the ALJ commented, "But it must not have been very well controlled for a period of time if you were having these diabetic ulcers.  Would you

agree with that statement?", to which Plaintiff responded in the affirmative).)  As of April 2014, Plaintiff was observed with an antalgic gait, and furthermore, was ambulating well and without signs of dizziness.  Foot x-rays showed "no acute process."  On May 14, 2014, Plaintiff underwent an arthroplasty of the fourth and fifth metaphalangeal joint of the right foot for an ulcer on the plantar aspect of the right foot.  Pathology showed no evidence of osteomyelitis, marked acute inflammation, dysplasia, or malignancy.  Post-operatively, Plaintiff experienced some swelling and was instructed to wear normal shoes as tolerated.  In June 2014, it was reported Plaintiff had healed from surgery and there was no evidence of further infection.

In August 2014, however, Plaintiff reported to Dr. Sciaroni for a blister on her left great toe (an ulcer), which required treatment.  But the ALJ notes this appears to have resulted from Plaintiff going to Santa Cruz and walking around in slipper-like shoes.  The ulcer was debrided and Plaintiff was prescribed medication.  She was instructed to keep the wound covered and not let her foot get wet, and to return to the office in one week for a follow up.  She was also "admonished for non-compliance" with the treatment plan.  (AR 39.)

Plaintiff did not return for her follow up appointment, but instead sought treatment in November 2014, three months later.  Plaintiff had another blister (ulceration), which may have been caused or exacerbated from wearing shoes that were too small.  Plaintiff exhibited minimal tenderness and an x-ray showed soft tissue swelling with no evidence of osteomyelitis.  As of December 2014, Plaintiff was again wearing shoes that were too tight, but the ulcer was diminishing in size.  Plaintiff was fitted for new orthotic shoes in January 2015.

Plaintiff did not show up for her scheduled appointment in March 2015; Plaintiff explained this was because she was in Mexico at the time.  Instead, Plaintiff returned in November 2015 with a "massive intractable plantar keratosis" on her right foot; this required Plaintiff to again use a wheelchair and be non-weight bearing, temporarily.  At a January 2016 cardiac consultation, however, Plaintiff's physical examination was unremarkable; she had a normal gait and reported she was able to exercise.

Finally, in March 2016, Plaintiff was fitted with new shoes and insoles after undergoing surgery on her right foot and she did not return for any additional treatment thereafter.

With respect to Plaintiff's allegations of debilitating chronic diarrhea, the ALJ notes Plaintiff sought treatment at the emergency room for vomiting and diarrhea in August 2013, reporting that since a laparoscopic procedure in 2007, she got frequent diarrhea; she was assessed with acute gastroenteritis, was in no distress and was ambulatory on examination, and felt better upon leaving the emergency department that same day.  (See AR 38.)  Thereafter, it appears that Plaintiff only sporadically sought treatment related to her diarrhea.  In December 2013, Plaintiff underwent a colonoscopy; she was assessed with small internal hemorrhoids and no sphincter tone, indicating sphincter dysfunction that may be related to her diabetes mellitus.  In April 2014, Plaintiff complained of dizziness and left upper abdominal pain; it was noted her dizziness improved with intravenous fluids, and her workup revealed hyperglycemia likely secondary to volume depletion.  In February 2015, Plaintiff was referred for dietary counseling.  In August 2015, Plaintiff denied diarrhea.  In September 2015, Plaintiff underwent an upper GI endoscopy that showed grade A reflux esophagitis and gastritis; the ALJ notes that follow up appointments were unremarkable.  (AR 41.)  In May 2016, Plaintiff underwent an ultrasound of her abdomen that showed the gallbladder was absent or severely contracted, "in an otherwise unremarkable examination of the abdomen."  (AR 43.)  In February 2017, Plaintiff underwent an abdominal ultrasound for pain that showed mild splenomegaly and cholecystectomy.  Plaintiff's last treatment appointment was with Dr. Jalodia in December 2017.  At that time, she underwent a colonoscopy that showed internal hemorrhoids and diverticulosis of the colon, "was advised to eat a high fiber diet, and has not sought treatment for abdominal pain or diarrhea since that time." (AR 44.)

4.   Analysis

As noted, the ALJ determined Plaintiff has a severe combination of impairments.  As a result, the ALJ was required to make a credibility finding as to Plaintiff's testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, he was required to give clear and convincing reasons as to why he did not find Plaintiff's subjective contentions about her limitations to be persuasive.  Id.

Here, the ALJ provided several clear and convincing reasons for reaching an adverse

credibility determination: (1) Plaintiff's testimony is inconsistent with the medical record; (2) it is inconsistent with the medical opinion evidence; (3) Plaintiff had unexplained gaps in treatment/a lack of treatment; and (4) Plaintiff was noncompliant with her treatment plan.  Any one of these reasons constitutes a sufficient basis to support the ALJ's adverse credibility determination.  See, e.g., Stobie, 690 Fed. App'x at 911 (finding symptom testimony conflicting with the objective medical evidence was a specific and legitimate clear and convincing reason for rejecting symptom testimony); Carmickle, 533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion); Roberts v. Berryhill, 734 Fed. App'x 489, 491 (9th Cir. 2018) ("unexplained gaps in treatment may support an ALJ's credibility determination") (citing Orn, 495 F.3d at 638); Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments constituted substantial evidence in support of finding the claimant was not entirely credible).

a.      **Inconsistency with the Medical Record**

In general, the ALJ found Plaintiff's claim of totally debilitating impairments was inconsistent with the medical record, which indicated periods of recovery, normal examination results, the ability to perform certain activities, and gaps/noncompliance in treatment.  See Molina, 674 F.3d at 1112–13 (citing Turner, 613 F.3d at 1225; Valentine, 574 F.3d at 693); Ghanim, 763 F.3d at 1165.  For example, the ALJ identified several treatment notes demonstrating that, despite her allegations of requiring use of a cane, Plaintiff was able to ambulate without one; that, even when ambulating with an antalgic gait, she was able to do so without difficulty; and on many occasions, Plaintiff's gait was normal.  The ALJ also identified clinical records that indicated "no acute process," soft tissue swelling with no evidence of osteomyelitis, and a number of "unremarkable" examinations, in which Plaintiff's range of motion and other vitals were "within normal limits."  The ALJ also noted the interims between Plaintiff's office visits, which were often several months in length.  And the ALJ noted Plaintiff's reports of taking trips to Santa Cruz and Mexico, walking around, being able to exercise, and other activities that are inconsistent with allegations of totally debilitating conditions.  The ALJ's

reference to the medical records to identify such inconsistencies in Plaintiff's testimony thus constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the ALJ's adverse credibility determination.  Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1161; see also Woods I, 2022 WL 1524772, at *10 n.4.

In particular, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical record because symptoms "have not persisted."  (AR 44.)  That is, the ALJ noted Plaintiff "was fitted with orthotic shoes in March 2016, and there is no evidence that the claimant returned to see Dr. Sciaroni [DPM] since that time."  (AR 44 (citing AR 657).)  Similarly, the ALJ noted Plaintiff was last treated for abdominal pain and diarrhea by Dr. Jalodia in December 2017, and has not sought treatment for abdominal pain or diarrhea since that time.  (AR 44 (citing AR 870–71).)

It appears Plaintiff only takes issue with this last finding of the ALJ, that her testimony as to the persistence of her symptoms is inconsistent with the medical records because the symptoms "have not persisted."  (ECF No. 18 at 15–16.)  Because Plaintiff does not address the ALJ's other reasons for discounting her testimony, she has waived those arguments on appeal.  On this basis alone, the ALJ's credibility determination must be upheld.  Lewis I, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief."); see also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).  Nonetheless, the Court also finds Plaintiff's instant argument to be unavailing.

Plaintiff does not dispute that she stopped seeking treatment in 2016 and 2017, respectively; instead, Plaintiff argues the ALJ failed to consider that her foot ulcers and diarrhea lasted from 2013–2016; accordingly, Plaintiff argues the ALJ should have determined she was disabled during that period.

As pertaining to her allegations of foot ulcers, Plaintiff argues that, even though she acknowledged at the hearing that she no longer had any problems with her feet and no foot ulcers were present since 2016, the ALJ failed to consider her assertion that her foot ulcers were slow healing and constituted a continuing condition.  This argument is not fully supported by the medical record.  The ALJ noted there were multiple gaps in treatment, during which time Plaintiff failed to attend her scheduled appointments, was noncompliant with her diet (which appears to have resulted in uncontrolled diabetes flare ups in her feet and elsewhere), and was noncompliant with her treatment plan to wear certain footwear.  For example, while acknowledging Plaintiff was in a wheelchair and her November 2015 ulcer was "slowly healing" as of December 2015, the ALJ also noted the ulcers had developed while Plaintiff was "in Mexico," and that she failed to visit Dr. Sciaroni's office for ten months prior to that—suggesting that Plaintiff needlessly exacerbated her own condition, which otherwise would have been manageable.  As previously noted, failure to seek treatment, noncompliance with a treatment plan, and unexplained gaps in treatment each constitute specific and legitimate reasons to reach an adverse credibility finding. Molina, 674 F.3d at 1114; Stenberg, 303 Fed. App'x at 552; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  On this record, the ALJ's discounting of Plaintiff's allegations or continuing or recurring ulcers on the basis that she failed to seek or comply with treatment was reasonable and supported by substantial evidence.  Further, Plaintiff fails to address the ALJ's findings of gaps in treatment and noncompliance with treatment plans and waives such argument.  Lewis I, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

Plaintiff similarly argues the ALJ failed to consider the entire period of time during which she suffered from diarrhea symptoms.  (ECF No. 18 at 16.)  This argument is similarly unpersuasive.  As with Plaintiff's diabetes symptoms, the ALJ noted Plaintiff infrequently sought treatment for her diarrhea.  Plaintiff's own summary of the medical evidence demonstrates this: Plaintiff acknowledges she sought treatment for her diarrhea in December 2013; January 2014; August 2015; October 2015; August 2016; and February, May, July, and August 2017.  (Id. at 6–7.)  Notably, Plaintiff acknowledges she never received a diagnosis relating to her diarrhea.  In addition, the cause of Plaintiff's diarrhea appears to be different across medical visits.  For

example, sometimes it was assessed that the diarrhea resulted from infection, at other times, it was assessed to be a complication from Plaintiff's diabetes.  (See AR 856.)  Finally, as previously noted, there were multiple medical visits in which Plaintiff denied having diarrhea.  Based on the large gaps of time between medical appointments seeking treatment, varying causes, and lack of a medical diagnosis, it was reasonable for the ALJ to conclude Plaintiff's diarrhea was not a continuous issue.

Plaintiff also argues the ALJ failed to consider the stated reason she has not sought further treatment (i.e., that she had tried multiple medications without success).  (ECF No. 18 at 16.)  The ALJ plainly rejected this reason as not credible at the hearing.  (AR 66–67 (In response to Plaintiff's testimony that she stopped taking medication after her doctor prescribed one medication that was not covered by Medi-Cal, the ALJ stated, "… you have to be proactive, when it comes to your own healthcare, and because this is a significant problem in your life, you have to keep pursuing it.  If you get a medication that is not covered by Medi-Cal, then you have to continue to try to find some medical solution to your problem…").)  See Molina, 674 F.3d at 1114 (claimant's "failure to assert a good reason for not seeking treatment," as well as asserting a reason that the ALJ determines is not believable, can cast doubt on the sincerity of the claimant's pain testimony).  The Court will not second-guess the ALJ's credibility determination.  Andrews, 53 F.3d at 1039; Thomas, 278 F.3d at 959.

### b.    Inconsistency with the Medical Opinions

The ALJ also found Plaintiff's symptom testimony was inconsistent with the medical opinions, which resulted in nondisability findings.  For example, the ALJ accorded "great weight" to the medical opinion of Dr. Rios.  (AR 44.)  Dr. Rios examined Plaintiff on October 22, 2014, and noted she did not appear to be in acute distress, and walked without any significant gait alteration; she was able to move around the room and get on and off the examination table with minimal difficulty; her abdomen was soft and non-tender; her station was normal, and heel toe, and tandem gait were normal; range of motion was within normal limits; motor strength was 5/5 through the upper and lower extremities; muscle bulk and tone was normal without atrophy; and examination of both feet showed no evidence of active ulcerations, but some symptoms of

neuropathy.  As a result, Dr. Rios opined Plaintiff was capable of performing medium work.  (He did not opine any limitations relating to Plaintiff's diarrhea.)  These findings are inconsistent with Plaintiff's allegations of being unable to stand, having difficulty walking, or requiring the use of a cane.

The ALJ also accorded "great weight," to Dr. Damania's opinion.  (Id.)  Dr. Damania's opinion was based on his review of Plaintiff's medical records through April 3, 2018, and his examination of Plaintiff, which showed Plaintiff had no residual infection or pain in her right foot; the range of motion in Plaintiff's neck, shoulders, elbows, wrists, hips, knees and ankles was within normal limits; Plaintiff's motor strength was 5/5 in all extremities with good tone and active range of motion bilaterally; she had grossly intact sensation throughout; normal reflexes and bilaterally symmetric; negative Romberg; no tenderness or muscle spasms to palpation in her back; her straight leg raising test was negative; and there was no wasting, flaccidity, or spasticity of the right lower leg.  Dr. Damania further noted that, although Plaintiff reported she was unable to walk and required the use of a cane, she was observed walking across the room without one. As a result, Dr. Damania opined Plaintiff was capable of performing medium work.  Dr. Damania did note on examination that Plaintiff's abdomen was soft and very tender; nevertheless, he did not opine any limitations relating to Plaintiff's diarrhea.

Similarly, the ALJ accorded "substantial weight" to the opinions of Drs. Reddy and Coleman, who "performed a thorough review of the medical evidence" and opined Plaintiff could perform a medium RFC with postural limitations.  (AR 45.)

All of these doctors opined Plaintiff was capable of performing essentially medium work. None opined Plaintiff required additional limitations based on her diarrhea.  Notably, Plaintiff has not challenged the ALJ's evaluation of the medical opinion evidence.  Lewis I, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  Nor does she address the ALJ's adverse credibility findings on this basis.  Thus, the ALJ presented a clear and convincing reason in support of his credibility determination.  Carmickle, 533 F.3d at 1160.

c.      **Unexplained Gaps/Lack of Treatment**

As the Court has noted, "[t]he ALJ is permitted to consider lack of treatment in his

1   credibility determination." <u>Burch</u>, 400 F.3d at 681. "[U]nexplained gaps in treatment may

2   support an ALJ's credibility determination," <u>Roberts</u>, 734 Fed. App'x at 491, as can an

3   "unexplained, or inadequately explained, failure to seek treatment…" <u>Fair</u>, 885 F.2d at 603. As

4   the Court has discussed, the ALJ pointed out Plaintiff's gaps in treatment as well as her failure to

5   attend scheduled appointments. This constitutes a clear and convincing reason in support of the

6   ALJ's adverse credibility determination. Further, Plaintiff does not dispute the ALJ's findings

7   with respect to her gaps in treatment or missed appointments. Plaintiff is therefore deemed to

8   have waived argument on this issue. <u>Lewis I</u>, 236 F.3d at 517 n.13; <u>Indep. Towers of Wash.</u>, 350

9   F.3d at 929.

10          **d.      Noncompliance with Treatment Plan**

11          Relatedly, noncompliance with recommended treatments constitutes substantial evidence

12   in support of an adverse credibility determination. <u>Stenberg</u>, 303 Fed. App'x at 552; <u>Burch</u>, 400

13   F.3d at 681 (affirming ALJ discrediting testimony due to lack of consistent treatment;

14   commenting on claimant's failure to attend physical therapy, chiropractor, or do home exercises,

15   "[t]hat [the claimant]'s pain was 'not severe enough to motivate [her] to seek [these forms of]

16   treatment, even if she sought some treatment, is powerful evidence regarding the extent to which

17   she was in pain.") (internal citations omitted). Here, as noted, Plaintiff missed appointments due

18   to travel, and failed to return for duly scheduled follow up visits. In addition, the ALJ discussed

19   medical notes in which Plaintiff was admonished for her noncompliance with treatment plans,

20   such as wearing her prescribed shoes and managing her glucose levels. As previously noted,

21   Plaintiff also does not address the ALJ's findings with respect to her noncompliance. <u>Lewis I</u>,

22   236 F.3d at 517 n.13; <u>Indep. Towers of Wash.</u>, 350 F.3d at 929.

23          In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in

24   support of his determination that Plaintiff's treatment is inconsistent with the severity of her

25   alleged symptoms. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1136 (9th Cir. 2014); SSR 16-3p at *10.

26   While Plaintiff may seek to suggest an alternative interpretation of the evidence, this is not

27   sufficient to establish reversible error. <u>See Ford</u>, 950 F.3d at 1154; <u>Burch</u>, 400 F.3d at 679

28   (citations omitted). Accordingly, the Court finds the ALJ provided clear and convincing reasons

1    supported by substantial evidence for discounting Plaintiff's symptom testimony.

2        **C.      RFC Determination**

3        Having determined the ALJ properly identified Plaintiff's severe impairments at step two

4    and reached an adverse credibility determination supported by substantial evidence in the record,

5    the Court finds Plaintiff's derivative RFC argument also fails.  See Stubbs-Danielson, 539 F.3d at

6    1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence

7    and testimony); Hairston, 827 Fed. App'x at 773 (summarily rejecting claimant's arguments that

8    RFC and step-five findings were unsupported by substantial evidence as "derivative of her

9    preceding arguments addressed and rejected above."); see also Embrey v. Bowen, 849 F.2d 418,

10   423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has

11   provided specific and legitimate reasons to discount be included in the hypothetical given the

12   VE).

13                                          **VI.**

14                           **CONCLUSION AND ORDER**

15       For the foregoing reasons, IT IS HEREBY ORDERED that:

16       1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

17               No. 18) is DENIED; and

18       2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

19               Commissioner of Social Security and against Plaintiff Bertha Chavez Carlos and

20               close this case.

21

22   IT IS SO ORDERED.

23   Dated:   **February 9, 2023**

                                               _____
24                                              UNITED STATES MAGISTRATE JUDGE

25

26

27

28